JOLIET BRIDGE & IRON CO. *v.* FREEMAN.

DRAINS—BRIDGES—CONTRACTS—IRREGULARITY—EFFECT.

> Where a lawful drain has been regularly laid out and estab-
> lished, the drain constructed, the benefits legally assessed,
> and the assessments practically all paid, the drain commis-
> sioner cannot refuse to draw an order upon the drain fund
> for the price of bridges and culverts erected as a part of the
> construction of the drain, on the ground of irregularities in
> the proceedings of his predecessor in letting the contract for
> said bridges and culverts.

Certiorari to Isabella; Searl, J., presiding. Submitted
July 2, 1907. (Calendar No. 22,337.) Decided July 13,
1907.

Mandamus by the Joliet Bridge & Iron Company to
compel Clarence H. Freeman, drain commissioner of
Isabella county, to issue orders for the payment of certain
bridges. There was an order denying the writ, and re-
lator brings certiorari. Reversed, and writ granted.

*James H. Davitt* (*I. A. Fancher*, of counsel), for re-
lator.

*F. MacNamara* and *F. H. Dodds*, for respondent.

HOOKER, J. This record shows that the respondent's
predecessor, acting in the capacity of county drain com-
missioner, laid out and established the Lewis Drain,
assessing benefits upon the township of Isabella at large.
No certiorari was taken, and therefore we are justified in
saying that the drain was a lawful drain.

Contracts were let for the excavating in sections, and a
separate contract was let to the relator, a builder of iron
bridges, for nine bridges and two culverts, i. e., steel
tubes, bids for bridges and tubes being first advertised
for. These contracts were performed, and the drain com-

missioner aforesaid certified to the performance of relator's contract, and accepted the bridges and tubes as satisfactory, in 1904, and they have been in use from that time to this. Subsequently, this respondent having become drain commissioner, relator made a demand upon him for orders upon the drain fund for the amount due to it upon the contract, and this was refused. Thereupon an application for a mandamus to compel it was filed in the circuit court, upon denial of which relator removed the proceeding to this court by certiorari.

The respondent's defense is rested upon the alleged invalidity of the relator's contract, and is made by the drain commissioner in reliance upon the case of *Kenyon v. Board of Sup'rs of Ionia Co.*, 138 Mich. 544, where we refused a mandamus asked for by the drain commissioner against the board of supervisors to compel the ordering of a drain tax. In that case it was held that, while the law authorized a purchase of drain or sewer tile for the drain under a separate contract, it was necessary for the commissioner to advertise for bids, and let the contract to the lowest responsible bidder, and not having done so, the subject was open to review; the acts rendering the proceeding fatally defective having occurred more than 10 days after the final order of determination by the drain commissioner, and the refusal of the board to act and the institution of the mandamus proceeding having occurred before any work had been done to construct the drain. This decision appears to have been based on section 3860, 1 Comp. Laws, which allows the board to hear objections made by any taxpayer to be affected, and, if it shall find the proceeding defective, to require such defect to be corrected.

In the present case no relief is sought against the board of supervisors, who, so far as we know, has not criticised the proceeding, or attempted to secure a correction of any defect before ordering the tax, nor is it alleged that any taxpayer liable to be affected has asked or sought to be heard by the board. Moreover, the taxpayers have per-

mitted the relator to complete the performance of its contract. This contest appears to be made at the instigation of the supervisor, Gray, and a highway commissioner, Dunn. Their opposition appears to have taken this form. Both having been present at the letting of the drain sections, and not satisfied with the bid offered upon the bridges, they sought to have another bid made, and claim that they were not afforded an opportunity to ascertain the details of the bridges required. After the contract was executed they joined in filing a bill in chancery against the then acting drain commissioner, in which they alleged their official character, and stated that they filed the bill in behalf of the township; that one-third of the expense of the drain was to be spread at large upon the township; that in their opinion most of the proposed expense of bridges could be saved by using old bridges then erected at or near by; that the contract advertised was not let at the time advertised, but at private sale, at an exorbitant price; that the highway commissioner should have been, but was not, consulted in regard to such bridges. The bill prayed an order requiring Eldred, the drain commissioner, in building these bridges, to meet with said highway commissioner, and co-operate with him in building and placing said bridges, and that said drain commissioner readvertise and relet the contract for furnishing nine bridges and two tubes for said drain. A temporary injunction was issued directing Eldred " not to proceed with the sale of the bridges, nor the placing of said bridges, nor to close the said contract with relator, nor to pay it any money on the same until the further order of the court." This bill was ultimately dismissed by stipulation, after which relator's demand was made on respondent, and he refused to issue the orders. It is inferable that all benefits assessed against private persons have been paid, except $1.60, that one-half of the amount apportioned to the township has been spread and paid, that the board of supervisors have not acted as to the remainder (in conformity to the wishes of Supervisor Gray,

counsel state because relator will not accept less than the contract price in full payment of its claim).

We have, then, a case where there is a valid drain, completed and accepted by the drain commissioner. No one is disputing its validity, or asking any correction of the proceeding. The only points in dispute relate to technical irregularities in advertising and letting the contract for bridges, and the amount agreed to be paid therefor. Neither of said irregularities was alleged in said bill, or otherwise raised, until after the work was done and payment demanded, when they are raised by the *drain commissioner* as a ground for repudiating the contract of his predecessor after full performance and acceptance. The case is not different than it would be had Eldred remained drain commissioner, and were now refusing to issue an order upon a contract made by himself upon a technical defect which no one else cared to assert before performance. We have often alluded to the inequity of attacks upon assessments made by those charged with benefits after they had secured such benefits, and have refused to permit such to succeed. The law attempts to prevent such abuses by requiring a certiorari at an early stage of the proceedings, and this is supplemented by the application of the rule already stated to irregularities arising at a later stage. By not seasonably moving in this matter, the inhabitants of the town affected may reasonably be held to have waived these defects, which may have been cheaper than to have delayed proceedings for correction, and it is not within the province of the commissioner to repudiate his contract and his acceptance upon the ground of his own or his predecessor's mistake, of which no one else has complained.

The order of the learned circuit judge must be reversed. The writ will issue as prayed, with costs of both courts.

McALVAY, C. J., and CARPENTER, GRANT, and MOORE, JJ., concurred.